## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 08-31361-HJB |
| DANIEL MOTTA, | ) | |
| ANNELEE MOTTA, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| | ) | |
| DAVID W. OSTRANDER, | ) | Adversary Proceeding |
| Chapter 7 TRUSTEE, | ) | No. 08-3041-HJB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTONIO J. ANDRE, PHYLLIS J. | ) | |
| ANDRE, DANIEL MOTTA, and | ) | |
| ANNELEE MOTTA, | ) | |
| | ) | |
| Defendants | ) | |

### MEMORANDUM OF DECISION

Before the Court is a Motion for Summary Judgment (the "Summary Judgment Motion") filed by David Ostrander, the Chapter 7 trustee (the "Trustee") in the underlying bankruptcy case filed by Daniel and Annelee Motta (the "Debtors") and the plaintiff in the present adversary proceeding filed against the Debtors and Antonio and Phyllis Andre (the "Andres"). Through his adversary proceeding, the Trustee seeks, *inter alia*, a ruling that the Andres' purported security interest in the Debtors' real property may be avoided by the

1

Trustee pursuant to § 544(a)(3) of the United States Bankruptcy Code[1] and preserved for the benefit of the Debtors' bankruptcy estate under § 551.  The Summary Judgment Motion requires the Court to determine whether a note and unrecorded mortgage signed by the Debtors in favor of the Andres discharged a prior note and recorded mortgage, rendering both mortgages either avoidable by or unenforceable against the Trustee.

I.   FACTS AND TRAVEL OF THE CASE

In 1997, the Debtors obtained a loan from the Andres to purchase their primary residence located in Ludlow, Massachusetts (the "Property").  That loan was memorialized in a $100,000 note signed by the Debtors and the Andres on October 20, 1997 (the "First Note").[2]  To secure payment of the note, a mortgage on the Property was also executed in favor of the Andres (the "First Mortgage").  The First Mortgage was properly recorded in the Hampden County Registry of Deeds (the "Registry").  Under the terms of the First Note and Mortgage, the Debtors were obligated to the Andres in the amount of $100,000 plus annual interest at a rate of 7 percent.  The Debtors were required to pay under the First Note the sum of $1,000 per month for ten years, with a $28,881.33 balloon payment due at the end of that ten-year period.

---

[1] All references to the "Bankruptcy Code" or the "Code" are to Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, title III, 119 Stat. 23 (2005), 11 U.S.C. §§ 101, et seq.

[2] Although a copy of the First Note was not attached to the Summary Judgment Motion or the Andres' objection, the associated mortgage refers to a note of the same date and recites the terms apparently contained in the First Note.  As the parties have not raised any arguments premised on the non-existence of the referenced note, the Court assumes that it exists, and was simply not produced in the current adversary proceeding.

From November 1997 through August 2006, the Debtors remained current on their payments; thereafter, they defaulted on the First Note. Following the Andres' formal demands for payment and the commencement of foreclosure proceedings in August 2007, the Debtors made a lump-sum payment to the Andres to become current on the monthly payments due under the First Note. The Debtors indicated to the Andres, however, that they would not be able to make the balloon payment due at the end of October.

According to Antonio's deposition testimony,[3] he was reluctant to extend the time for payment of the remainder owed on the First Note, and told the Debtors that they would have to find financing elsewhere in order to make the balloon payment. Antonio Andre Dep. 19:4-19:13, July 1, 2009. Ultimately, however, the Andres agreed to accept a new note that would spread payment of the balance of the First Note over approximately three years (the "Second Note"). The principal balance under the Second Note was $29,364.50 – representing the amount of the balloon payment due under the First Note plus interest accrued through January 2008, when the Debtors' first payment under the Second Note was due. The Second Note also provided for a higher annual interest rate (10 percent) and required the Debtors to make 34 monthly payments of $995.35. In conjunction with the Second Note, the Debtors and the Andres also executed a Second Mortgage, which referred to and recited the terms contained within the Second Note. The Second Mortgage was not recorded in the Registry.

---

[3] Although Antonio and Phyllis are both listed on the notes and mortgages at issue, beyond having signed the notes and mortgages, Phyllis had little or no personal knowledge of relevant events. Phyllis Andre Dep. 6:8-6:14, July 1, 2009.

At his deposition, Antonio testified that an attorney hired by the Debtors ("Attorney Graham") prepared the Second Note and Mortgage. Antonio Dep. 22:8-12.[4] According to Antonio, he told Attorney Graham that he would like to have the Second Mortgage recorded, but was told by her that "it doesn't have to be recorded, it's recorded already." Antonio Dep. 23:15-22. He further testified that a release of the First Mortgage was not drafted and that he never told the Debtors such a release would be recorded, because, he said, it "would be kind of foolish to sign a release if it was not paid up." Antonio Dep. 23:9-13; 23:23-24:10; 44:9-12.

On September 19, 2008, the Debtors filed a voluntary petition (the "Petition") under Chapter 7 of the Bankruptcy Code. On Schedule A-Real Property, filed in connection with the Petition, the Debtors disclosed their ownership interest in the Property, estimating its fair market value at $200,000. On Schedule D-Secured Creditors, the Debtors listed the Andres as creditors holding a $45,856 claim secured by a mortgage on the Property.

On October 9, 2008 the Andres filed a proof of claim (the "Proof of Claim") in the Debtors' bankruptcy case, asserting a secured claim against the Debtors in the amount of $20,754.60. In support, the Andres attached a copy of the Second Note and Mortgage to the Proof of Claim. At the October 16, 2008 meeting of creditors held pursuant to § 341 of the Code (the "341 Meeting"), the Trustee questioned the Debtors regarding the debt owed to the Andres and learned for the first time that there had been a prior note and mortgage. In the Complaint, the Trustee says the Debtors testified at the 341 Meeting that

---

[4] Antonio testified that he did not pay Attorney Graham and did not regard her as his personal lawyer, since the Debtors had agreed to pay the legal expenses associated with consummating the new agreement and had chosen Attorney Graham themselves. He did, however, know Attorney Graham and considered her a friend. Antonio Dep. 24:12-19; 40:20-41:8.

4

Antonio told them the First Mortgage would be "removed" and the Second Mortgage recorded. Compl. ¶ 18.

Thereafter, the Trustee discovered that the First Mortgage remained on record at the Registry and the Second Mortgage was never recorded. On December 2, 2008, he filed the present adversary against the Debtors and the Andres. The Andres, but not the Debtors, filed an answer to the Complaint, and default has since entered against the Debtors. On September 29, 2009, the Trustee filed his Summary Judgment Motion, to which the Andres' objected. After a hearing on the Summary Judgment Motion, the Court took the matter under advisement.

II. POSITIONS OF THE PARTIES

Through Count I of the Complaint and in his Summary Judgment Motion, the Trustee seeks avoidance of the Second Mortgage and preservation of the mortgage for the benefit of the Debtors' bankruptcy estate, pursuant to §§ 544(a) and 551 of the Bankruptcy Code.[5] The Trustee argues that the Second Mortgage is voidable as an unrecorded security interest in the Property and further maintains that the First Note and Mortgage are unenforceable, as the Second Note and Mortgage operated as a novation of the Debtors' original obligation.

According to the Trustee, since the Second Mortgage was not recorded at the time the Petition was filed, it is avoidable under § 544(a) and preserved for the bankruptcy estate under § 551. Since under § 544(a)(3) of the Code, the Trustee is granted the status

---

[5] In Count II of the Complaint, the Trustee sought a ruling that the Debtors' homestead exemption is subordinate to the bankruptcy estate's interest in the Property. Since the Debtors have been defaulted, Count II is no longer at issue.

5

of a bona fide purchaser as of the commencement of the case and may avoid transfers that are invalid against such purchasers under relevant state law, and since under Massachusetts law, unrecorded mortgages are invalid against bona fide purchasers without knowledge of the mortgage, the Trustee says there are no disputes of material fact and the Second Mortgage must be avoided as a matter of law.

In addition, despite the fact that no release or discharge of the First Mortgage was recorded, the Trustee says that novation may be inferred from the parties' conduct. According to the Trustee, the very fact that the Andres signed the Second Note and Mortgage evidences their intent to extinguish the Debtors' obligations under the First Note and Mortgage. The Trustee also contends that the fact that the Andres attached the Second Note and Mortgage to their Proof of Claim demonstrates their belief that the Debtors' obligations under the First Note and Mortgage were discharged.

The Andres do not take issue with the contention that an unrecorded mortgage is unenforceable against a bona fide purchaser without knowledge and may be avoided by a bankruptcy trustee under § 544(a). Instead, they maintain that the Trustee's argument fails because the First Mortgage, which remains of record, was never discharged. The Andres say that the Trustee has failed to adequately demonstrate that the Andres ever intended the Second Note and Mortgage to discharge the Debtors' obligations under the First Note and Mortgage. Thus, they argue, there could not have been a novation, because there was never an agreement that the First Note and Mortgage were satisfied.

The Andres interpret Massachusetts case law, primarily as articulated in Pomroy v. Rice, 33 Mass. 22, 16 Pick. 22 (1834), Financial Acceptance Corp. v. Garvey, 380 N.E.2d 1332 (Mass. App. Ct. 1978), and Piea Realty Co. v. Papuzynski, 172 N.E.2d 841, 342

6

Mass. 240 (1961), as providing that the execution of a new note and mortgage does not constitute payment of the original note and discharge the original mortgage when the underlying debt has not been paid. Because the Debtors never paid the underlying obligation in full, the Andres say the First Mortgage has not been discharged and remains as security for the amount due under the Second Note.

In response, the Trustee says that the Financial Acceptance and Piea Realty cases are factually distinguishable. The Trustee argues that the court's holding in Financial Acceptance relied on the presence of a "dragnet" clause in the mortgage at issue there, a provision intended to secure payment of present *and* future obligations. Since the First Mortgage does not contain a similar clause, the Trustee says it cannot secure the subsequent obligations incurred by the Debtors when they signed the Second Note. Further, the Trustee notes that the party attacking the validity of the mortgage in Financial Acceptance was found to have actual knowledge of the relevant transactions, a knowledge the Trustee is deemed to lack under § 544(a).

The Trustee also maintains that Piea Realty is distinguishable because the court held that the unrecorded second notes and mortgages at issue in that case were intended by the parties to substitute for prior, recorded, first notes and mortgages. In contrast, says the Trustee, the Debtors and the Andres did not intend the Second Note and Mortgage to "take the place of" the First Note and Mortgage, but instead intended to create a "different and new obligation." Trustee Reply Br. 3.

7

III.   DISCUSSION

    A.   **Summary Judgment Standard**

Summary Judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2), made applicable to these proceedings by Fed. R. Bankr. P. 7056. Although the existence of a genuine dispute of material fact will prevent the entry of summary judgment, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

With one exception noted below, the parties have agreed to the material facts relevant to this dispute.

    B.   **Section 544(a)(3) and Unrecorded Mortgages**

Section 544(a)(3) grants a trustee in bankruptcy the power to avoid liens that would be unenforceable against a bona fide purchaser for value under applicable non-bankruptcy law. 11 U.S.C. § 544(a)(3)[6]; see, e.g., Riley v. Sullivan (In re Sullivan), 387 B.R. 353, 357

---

[6] Similarly, the Trustee takes the position of a judicial lien creditor or creditor with an unsatisfied execution. Section 544(a) provides:

(a)    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by --

    (1)    a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a

(B.A.P. 1st Cir. 2008) ("Section 544(a)(3) vests the trustee with the powers of a bona fide purchaser of real property for value, and allows the trustee to invalidate unperfected security interests," including unrecorded mortgages.) The trustee stands as a "hypothetical" bona fide purchaser, "without regard to any personal knowledge that the trustee may have of competing interests in the Debtor's property." In re Dlott, 43 B.R. at 793.

"In Massachusetts, an unrecorded mortgage which as between the parties would be a valid equitable interest, is invalid against third parties who do not have actual notice." In re Harbour House Operating Corp., 26 B.R. 324, 331 (Bankr. D. Mass. 1982) (citing Tramontozzi v. D'Amicis, 183 N.E.2d 295, 297, 344 Mass. 514 (1962); Lamson & Co. v. Abrams, 25 N.E.2d 374, 376, 305 Mass. 238 (1940)); see also In re Smith, 315 B.R 636, 640 (Bankr. D. Mass. 2004). Given the undeniable effect of § 544(a)(3) and the clarity of

---

<blockquote>

creditor or simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

</blockquote>

11 U.S.C. § 544(a). As the court explained in Clark v. Kahn (In re Dlott), judgment creditors and bona fide purchasers in Massachusetts are treated identically in terms of the enforceability of unrecorded interests in property. 43 B.R. 789, 793 (Bankr. D. Mass. 1983) ("[a]n attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed") (quoting Gen. Builders Supply Co. v. Arlington Co-op Bank, 271 N.E.2d 342, 359 Mass. 691 (1971)).

9

Massachusetts case law on this issue, if the Andres relied solely on the unrecorded Second Mortgage for their security interest in the Property, the Court would have no difficulty in finding in favor of the Trustee.

But in order to truly prevail, the Trustee must not only demonstrate the avoidability of the Second Mortgage, he must also be correct that the First Mortgage, which remains on record and which the Andres say also secures the Second Note, has been discharged and no longer constitutes a valid lien on the Property.

### C. Discharge of the First Mortgage

To succeed on a theory of novation, the Trustee must prove "that there was an existing valid original obligation, . . . that there was an agreement of all parties to the new contract, the extinguishment of the old contract, and a valid new contract." Larson v. Jeffrey-Nichols Motor Co., 181 N.E. 213, 214, 279 Mass. 362 (1932). Here, the parties agree that the First Note and Mortgage constituted valid original obligations, that the parties agreed to the Second Note and Mortgage, and that the Second Note and Mortgage are valid as between the Debtors and the Andres. The Trustee and the Andres strenuously disagree, however, whether there was an "extinguishment" of the First Mortgage.

This question is essentially one of intent – did the Debtors and the Andres agree and intend to discharge the obligations under the First Note and Mortgage when they executed the Second Note and Mortgage? – for "[w]ithout the agreement of the parties to an extinguishment of the prior contract and to a substitution of the new contract, there can be no novation." Pagounis v. Pendleton, 753 N.E.2d 808, 811 (Mass. App. Ct. 2001). And "[w]hether the parties intended a novation [is] a factual question," id., traditionally left for resolution at trial.

10

The Trustee has not presented any direct evidence or testimony to contradict the Andres' assertion that they did not intend the Second Note and Mortgage to discharge the First Mortgage or the Debtors' obligation to pay the amounts remaining unpaid on the First Note. Although the Trustee alleges in the Complaint that the Debtors testified at the 341 Meeting that the Andres had indicated they would release the First Mortgage and record the Second Mortgage, the Trustee should have attached a transcript of that testimony to his Summary Judgment Motion or provided an affidavit from the Debtors to that effect. As further explained below, however, that omission is harmless, as the facts of this case otherwise establish that the First Mortgage was not discharged and was left unchanged by the execution of the Second Note.

The Trustee's reliance on circumstantial evidence and the Andres' conduct to impute an intended novation fares no better. First, the Trustee says that the Andres' very execution of the Second Note and Mortgage evidenced their intent to discharge the prior obligations and security interest represented by the First Mortgage. Although an intended novation may be found from circumstantial evidence and the conduct of parties to an agreement, see Johnston v. Holiday Inns, Inc., 565 F.2d 790, 796-97 (1st Cir. 1977),[7] "a finding of an intent to discharge the preexisting indebtedness should rest on a 'clear and

---

[7] See also The Tudor Press, Inc. v. Univ. Distrib. Co., 198 N.E. 244, 245, 292 Mass. 339 (1935) ("the question of whether a novation has been proved . . . is not to be determined by the secret thought or unexpressed intent of any of the parties, but is to be determined by the intent as expressed by words and acts of all the parties in light of the circumstances"); Pagounis, 753 N.E.2d at 811 ("'a substituted contract or novation may be inferred despite a lack of express language to that effect,' and may be based solely on the circumstances and conduct of the parties . . . ") (quoting Lipson v. Adelson, 456 N.E.2d 470, 472 (Mass. App. Ct. 1983)) (other citations omitted).

11

definite indication' of such intent," Pagounis, 753 N.E.2d at 811 (quoting Lipson, 456 N.E.2d at 472).

The mere execution of the Second Note and Mortgage, even with the revised principal balance and increased interest rate, may have constituted a "clear and definite indication" of an intent to agree to different repayment terms than those contained in the First Note, but not necessarily an intent to discharge the First Mortgage. Although "[i]n the abstract . . . inconsistency between two agreements can be an indication of substitution," Lipson, 456 N.E.2d at 472-73, the inference of novation should rest on a more "firm basis" than the mere fact that a debtor and lender have executed a new agreement to allow further time for payment. Id. As the Lipson court explained:

> A revised payment schedule, intended to accommodate a debtor in distress, has no tendency to suggest that the creditor would find payment by the original timetable disagreeable. Nor would an intention to work out a settlement and avoid litigation by itself indicate an intention to discharge preexisting obligations."

Id. at 473 .

Similarly, the Andres' attachment of the Second Note and Mortgage to the Proof of Claim does not necessarily support an inference that the Andres' intended to discharge the First Mortgage. In his uncontroverted deposition testimony, Antonio stated that the Andres never intended the Second Note and Mortgage to discharge or release the First Mortgage. And the Andres' failure to record the Second Mortgage supports Antonio's deposition testimony that the Andres believed the First Mortgage remained a source of security for the debt (thus obviating the need to record the Second Mortgage). While the Andres' failure to attach the First Mortgage to the Proof of Claim may have given rise to an objection to

their Proof of Claim, it does not counter the direct testimony and inferences from other facts suggesting that the Andres' did not intend to discharge the First Mortgage.

In sum, the Trustee has not demonstrated through "the pleadings, the discovery and disclosure materials on file, and [ ] affidavits," Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56, the Andres' "clear and definite indication" to discharge the First Mortgage required to support a finding of novation. Pagounis, 753 N.E.2d at 811.

In addition, the Court agrees with the Andres that other factually similar Massachusetts cases litigated and decided under theories other than novation militate in the Andres' favor. For over a century, the Massachusetts Supreme Judicial Court (the "SJC") has consistently found in favor of secured lenders when faced with challenges to their security based on subsequently-executed notes or mortgages related to the same debt. Although, under Massachusetts law, the execution of a new note related to a debt is presumed to discharge the obligations under the original note,[8] this presumption is rebutted where it is shown that the parties did not intend to discharge the original debt – usually a question of fact.[9] But where the lender holds security for payment of the debt, the presumption of discharge is rebutted by the existence of that security interest, and only

---

[8] Piea Realty, 172 N.E.2d at 845 (citing Dow v. Poore, 172 N.E. 82, 83, 272 Mass. 223 (1930); Stebbins v. North Adams Trust Co., 136 N.E. 880, 882, 243 Mass. 69 (1922)); Rosenberg v. Robbins, 194 N.E. 291, 294, 289 Mass. 402 (1935); Dow, 172 N.E. at 83 (execution of note founded on prior indebtedness gives rise to presumption that the note is a discharge and extinguishment of the prior obligation) (quoting Stebbins, 136 N.E. at 882); Cotton v. Atlas Nat'l Bank, 12 N.E. 850, 854, 145 Mass. 43 (1887) (same); Dodge v. Emerson, 131 Mass. 467, 468 (1881) (same); Lovell v. Williams, 125 Mass. 439, 441 (1878) (same); Butts v. Dean, 43 Mass. 76, 2 Metcalf 76 (1840) (same).

[9] Rosenberg, 194 N.E. at 291; Saulenas v. Penn, 192 N.E. 42, 43, 287 Mass. 409 (1934); Dow, 172 N.E. at 83 (quoting Stebbins, 136 N.E. at 882-83); Kingman v. Soule, 132 Mass. 285, 287 (1882).

13

evidence of a contrary intent will result in a finding that the original security was discharged.[10]

In 1862, the SJC articulated the legal principles underlying this line of cases:

> The courts regard the interests of mortgagees with great liberality, for the purpose of effectually securing to them the performance of the contract which the mortgage was originally designed to secure; and they allow no change of form of the indebtedness to discharge the mortgage, where there has been no actual payment or release. . . . Such cases are based upon the fact that at no period of time has there been an actual extinguishment of the indebtedness secured by the mortgage.

Joslyn v. Wyman, 87 Mass. 62, 62, 5 Allen 62 (1862); see also Pomroy, 33 Mass. at 24 ("[W]here a mortgage and note are given to secure the payment of a sum of money, the renewal of the note does not operate as a discharge of the mortgage . . . . Nothing but

---

[10] Piea Realty, 172 N.E.2d at 845 (citing Dow, 172 N.E. at 83; Stebbins, 136 N.E. at 882); Rosenberg, 194 N.E. at 291 ("The significance of the possession by a creditor of security for a debt is that it warrants an inference that he did not intend - and the debtor did not understand him to intend - by accepting a negotiable promissory note for such debt to relinquish his security by accepting the note as payment."); Dow, 172 N.E. at 84 (quoting Lovell, 125 Mass. at 441); Stebbins, 136 N.E. at, 882-83 ("the presumption is rebutted where it appears that thereby the security held for the original debt will be released"); Spooner v. Roberts, 62 N.E. 4, 5 , 180 Mass. 191 (1902) (where it appeared the parties so intended, new notes and mortgages given to extend time of payment of first notes and mortgages were "but one debt"); O'Conner v. Hurley, 16 N.E. 764, 767, 147 Mass. 145 (1888) ("where a new note is given for an old one secured by mortgage, it will not be held that the original debt and the mortgage for payment thereof, were discharged unless it appears affirmatively that such was the intention"); Cotton, 12 N.E. at 854 ("Accepting a negotiable note for a secured debt will not discharge the debt, because it will not presumed that the creditor intended to give up his security."); Dodge, 131 Mass. at 468 ("if the debt is a note secured by mortgage, the renewal of the note, or the substitution of another note therefor, is not necessarily to be presumed a payment, so as to discharge the mortgage"); Lovell, 125 Mass. at 441 (" the fact that such presumption would deprive the creditor taking the note of the substantial benefit of security, such as a mortgage . . ., has been held to be sufficient evidence to meet and repel the presumption"); Taft v. Boyd, 95 Mass. 84, 86-87, 13 Allen 84 (1866) (new note and mortgage taken to cover balance of prior note and mortgage did not automatically discharge the first mortgage); Pomroy v. Rice, 33 Mass. at 24; cf. Macomber v. French, 84 N.E. 328, 329, 198 Mass. 20 (1908) (where second and third mortgages were executed to pay debt secured by first mortgage, the first mortgage was presumed discharged because "the second and third mortgages were given upon the *express agreement* that they 'operated to satisfy, extinguish and pay' the first mortgage, which all parties intended thereby to discharge") (emphasis added).

14

payment of the debt will discharge the mortgage."); Fin. Acceptance, 380 N.E.2d at 1335 (citing Pomroy, 33 Mass. at 24).

These legal principles remain unchanged by subsequent Massachusetts case law, as noted in the relatively more recent cases cited by the Andres, Piea Realty Co. v. Papuzynski, 172 N.E. 2d 841, 342 Mass. 240 (1961), and Financial Acceptance Corp. v. Garvey, 380 N.E.2d 1332 (Mass. App. Ct. 1978). The Trustee argues that both cases are distinguishable. He is correct insofar as the factual circumstances *are* distinguishable, but the factual differences are ultimately immaterial to the relevant points of law articulated in those cases.

In Piea Realty, the parties to notes secured by mortgages agreed to execute new notes and mortgages to change the terms of the obligation (i.e., the interest rate). 172 N.E.2d at 843. Discharges of the original mortgages were executed, but never recorded. Id. Nor were the new mortgages recorded. Id. The SJC noted that the presumption that a prior obligation is discharged upon execution of a new note founded on the prior obligation is "rebutted where it appears that thereby the security held for the original debt will be released." Id. at 845. Recognizing that factual determinations were required to resolve questions regarding the parties' intent, id. at 845, the SJC ultimately held that there was no discharge of the original mortgages because the intent "was to change the terms of the notes but to make no change in [the lender's] relative security," id. at 846, and the lender "should retain the security afforded by the [original mortgages] and which the [new mortgages] were designed to continue," id.[11]

---

[11] Piea Realty involved multiple properties where new notes and mortgages were meant to replace original notes and mortgages. The SJC stated that, based on the record presented on

15

While the new notes and mortgages in Piea Realty were not executed to extend the payment period, as were the Second Note and Mortgage in the present case, the Piea Realty court's analysis reaffirms the long-standing Massachusetts law discussed above – namely, that execution of new notes and mortgages do not presumptively discharge prior notes and mortgages – and supports the Court's conclusion here.

Similarly, although the Financial Acceptance case is also factually distinguishable, in that case the Massachusetts Appeals Court expressly reiterated basic principles of Massachusetts law material to the outcome in this case. In Financial Acceptance, the lender and borrower executed a mortgage containing a "dragnet clause" – a clause intended to have the mortgage secure both pre-existing and future indebtedness. 380 N.E.2d at 1334. Ultimately, the lender and borrower executed new notes, intended to cancel the earlier notes and "rollover" or "renew" the original and additional obligations. Id. at 1334 & n.1. The original mortgage was not discharged. Id. at 1334. Subsequently, the borrower obtained an additional loan from another entity and granted that second lender a mortgage on the same property. Id. at 1334-35. The second lender later sought to foreclose on its mortgage and argued that the first lender no longer retained a security interest in the property because the original mortgage secured only the original notes and not the later, "rewritten" notes. Id. at 1335.

---

appeal, it appeared that purchasers of two of the properties, who took by deeds expressly subject to the original mortgages after the new mortgages were executed, would "get 'just what . . . [they] bargained for if . . . held to take subject to' the [original] mortgages." 172 N.E.2d at 847. But the court ultimately decided that the case had not been fully tried below "upon the issues of whether [the purchasers], before they took title had notice of the [new notes and mortgages] and whether they were purchasers for value who had changed position in reliance upon the form of the [new notes and mortgages]." Id. at 847-48. Here, the hypothetical bona fide purchaser contemplated by § 544(a)(3) is considered without knowledge of the unrecorded interest, obviating any analogous question of reliance upon the Second Note and Mortgage.

16

Much of the court's discussion in Financial Acceptance focuses on the interpretation and validity of the "dragnet" clause in the original mortgage. See id. at 1335-36. But the court also reiterated the rule that "[u]nder Massachusetts law the renewal of a note in a different form does not operate to discharge a mortgage where the debt itself has not been paid." Id. at 1335 (citing Pomroy v. Rice, 33 Mass. at 24). Furthermore, although the court noted that the second lender could not attack the original mortgage because its principal had actual knowledge of rewritten notes, id. at 1336, it did not find that notice necessarily essential to the outcome. Discussing the Piea Realty case, the Financial Acceptance court stated that the second lender would have had notice of the original note and mortgage and "conclude[d] that . . . the intent of the parties [to continue the security of the original mortgage] controls and further, in light of the [first lender's] reliance on the mortgage as security and the [second lender's] knowledge of the existence of the recorded mortgage, that equitable considerations, i.e., the possibility of unjust enrichment, require that the mortgage not be discharged but remain as security for the [rewritten] notes." Id. at 1337.

Both cases, therefore, reaffirm the central principles applicable to the case at hand. Since the Trustee has not presented the Court with evidence of an affirmative intent to release the Debtors' obligations under the First Mortgage, and since the original debt has not yet been paid, the First Mortgage remains as security for the Debtors' continued obligation to the Andres. See Spooner, 62 N.E. at 5.

The Trustee's status as a bona fide purchaser under § 544(a)(3) does not change the result. The First Mortgage was properly recorded and remained on record on the date

of case commencement.[12] This provides adequate notice to bona fide purchasers that the Property was encumbered by a mortgage granted to the Andres. See, e.g., Piea Realty, 172 N.E.2d at 847; Fin. Acceptance, 380 N.E.2d at 1336-37; Henshaw v. Summer, 23 Pick. 446, 453-54 (Mass. 1839). The Second Note included only the amount outstanding on the Debtors' obligations under the First Note, and the higher interest rate did not increase the secured debt to an amount greater than that stated in the First Note. Thus, no bona fide purchaser or junior lienholder would have been prejudiced by the parties' execution of the Second Note in order to allow an extension of time for the repayment of the outstanding debt.[13] Because there would be no such prejudice to a bona fide purchaser, attaching lien creditor, or other junior lienholder, the Debtors' obligation to the Andres remains secured by a properly perfected mortgage, and the Andres' lien on the Debtors' property may not

---

[12] Compare, e.g., Tomsic v. Beaulac (In re Beaulac), 298 B.R. 31 (Bankr. D. Mass. 2003) and Collins v. Bank of New England-West, N.S. (In re Daylight Dairy Products, Inc.), 125 B.R. 1 (Bankr. D. Mass. 1991). In both Beaulac and Daylight Dairy, Chapter 7 trustees avoided unrecorded mortgages under § 544(a). In those cases, the debtors and their respective lenders agreed to change the terms of mortgages on the debtors' properties held by the banks. Discharges of the mortgages were recorded, but the replacement mortgages were mistakenly not recorded. In Daylight Dairy, the court recognized that, under Massachusetts law, "[a]bsent the intervening rights of third parties, the Bank would unquestionably be entitled to obtain reinstatement of its mortgage under general equitable principles granting relief against mistake," Daylight Dairy, 125 B.R. at 2-3 (citing N.E. Co-op. Bank v. McLean, 15 N.E.2d 241, 245, 300 Mass. 285 (1938); Gen. Builders, 271 N.E.2d at 345), and the court in Beaulac similarly noted that Massachusetts law allowed for reinstatement of a mortgage where it has been discharged by mistake. Beaulac, 298 B.R. at 35. But both courts concluded that the banks' secured positions could not be reinstated vis-a-vis the trustees, because the mortgages had been *discharged on the record* at the time of filing and thus were avoidable as unenforceable against a hypothetical bona fide purchaser under § 544(a). Beaulac, 298 B.R. at 35-36; Daylight Dairy, 125 B.R. at 4-5.

[13] See, e.g., Piea Realty, 172 N.E.2d at 847; Barbano v. Cent.-Hudson Steamboat Co., 47 F.2d 160, 162 (2d Cir. 1931) (extension agreement may include a higher interest rate, so long as it does not impair a junior lienholder's security); Guleserian v. Fields, 218 N.E.2d 397, 401-02, 351 Mass. 238 (1966) (junior lienholder "is regarded as necessarily taking the risk of a postponement . . . of the date of payment of the whole or part of the senior mortgage debt"); Upton v. Nat'l Bank of S. Reading, 120 Mass. 153, 156 (1876) (oral agreement to extend time for repayment of note secured by recorded mortgage was enforceable up to the amount originally secured).

be avoided under § 544(a). Accordingly, the Trustee's request for preservation of the secured interest under § 551 is moot.[14]

IV.   CONCLUSION

For the foregoing reasons, the Trustee's Summary Judgment Motion will be denied. Furthermore, the Court finds that entry of summary judgment in favor of the Andres is appropriate in this case. Before granting summary judgment *sua sponte*,[15] "two conditions precedent must be satisfied: (1) the case must be sufficiently advanced in terms of pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target must have received appropriate notice." Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999); Berkovitz v. HBO, Inc., 89 F.3d 24, 29 (1st Cir. 1996);  A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett), 367 B.R. 21, 25-26 (Bankr. Mass. 2007).

There is no evidence demonstrating a genuine dispute as to the Andres' intent regarding the discharge of the First Mortgage upon signing the Second Note and Mortgage. The Trustee was clearly on notice that the Court would be considering that issue on a summary judgment basis, since the Trustee raised it for consideration in his Summary Judgment Motion. See Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 431 (1st Cir. 1998). As discovery has now closed and the parties have had the opportunity to provide the Court with the available evidence,[16] and since no remaining material factual issues are in dispute,

---

[14] Similarly, Count II against the Debtors is also now moot, as it was predicated upon the Trustee's success under Count I against the Andres.

[15] Although the Andres objected to the Trustee's Summary Judgment Motion, they did not file a cross-motion for summary judgment.

[16] See Frederique-Alexandre v. Dep't of Natural & Envtl. Res., 478 F.3d 433, 439 (1st Cir. 2007).

the Court will *sua sponte* enter summary judgment for the Andres.  An order in conformity with this memorandum shall issue forthwith.


DATED: January 15, 2010          By the Court,

*/s/ Henry J. Boroff*
_____
Henry J. Boroff
United States Bankruptcy Judge